IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| THE OFFICIAL STANFORD INVESTORS COMMITTEE; and PHILIP A. WILKINSON, and HORACIO MENDEZ, individually and on behalf of a class or classes of all others similarly situated, | § § § § § § § | |
| *Plaintiffs,* | § § | |
| V. | § § | NO. 3:11-cv-00329-N |
| ADAMS & REESE, LLP; BREAZEALE, SACHSE & WILSON, LLP; ROBERT SCHMIDT; JAMES AUSTIN; CLAUDE F. REYNAUD, JR.; CORDELL HAYMON; THOMAS FRAZER | § § § § § § § | |
| *Defendants.* | § | |

**REPLY IN SUPPORT OF BREAZEALE, SACHSE & WILSON, LLP'S
MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

Breazeale, Sachse & Wilson, LLP ("BSW"), for its reply to Plaintiffs' Response and Brief In Opposition to All Defendants' Motions to Dismiss Plaintiffs' First Amended Complaint [Docket #77, the "Response"], states:

I. THE COMMITTEE'S CLAIMS ARE NOT PLAUSIBLE

A.   **The Fraudulent Transfer Claim**

Plaintiffs object to BSW's statements that Stanford Trust Company ("STC") was "separately capitalized" and that a $250,000 payment was made to BSW as escrow agent, calling these statements summary judgment type arguments. Response ¶¶ 41-44.

BSW's statement that STC was "separately capitalized" is based on the allegations of the complaint. Specifically, Plaintiffs allege STC was a Louisiana trust company regulated by the

Louisiana Office of Financial Institutions (OFI), and OFI approved Stanford Group Company's ("SGC") acquisition of STC on the condition that "the company maintain minimum equity capital levels of $500,000." Plaintiffs' First Amended Complaint ("FAC") ¶¶ 59-60, 65. Plaintiffs' also allege STC's capitalization was later increased to $2,000,000, with a promise to "maintain $5,000,000 in capital as long as the OFI allowed STC to stay in business." FAC ¶ 85. Further, since June 27, 2003, Louisiana has required a trust company such as STC to "maintain a minimum of two million dollars in capital at all times." La. R.S. 6:574. This increase in the capital requirements for trust companies by the Louisiana Legislature is also discussed in the complaint. FAC ¶¶ 79-81. For these reasons, Plaintiffs' objection to the "separately capitalized" statement should be overruled, as the statement is based on allegations in the complaint.

BSW acknowledged in its Motion to Dismiss that the statement concerning the $250,000 escrow payment was outside the Rule 12(b)(6) record. It was mentioned to alert the Court and the Committee that the escrow payment "may result in an evidentiary challenge to the Committee's standing to assert the claim." [Docket #69, p. 12]. BSW confirms the purpose of this statement and affirmatively disavows any reliance on this statement as a basis for dismissal under Rule 12(b)(6).

B.     The Breach of Fiduciary Duty Claim

The Committee concedes it has dismissed its breach of fiduciary duty claim as to Mr. Reynaud to pursue it in a separate action. Response, p. 4, n.4. The Committee offers no substantive response to BSW's motion to dismiss the intertwined respondeat superior claim against BSW in this case, as the same claim is also made against BSW in the later filed separate action now pending before this Court as docket number Civil Action No. 3:12-CV-00495-B and styled *Ralph S. Janvey, in his Capacity as Count-Appointed Receiver for the Stanford*

*Receivership Estate, et al. v. Adams & Reese, LLP, et al.*. Dismissal of this claim in this case without prejudice is appropriate to avoid a multiplicity of suits. Plaintiffs offer no argument or authority in opposition to dismissal on this ground.

## II. THE INVESTORS' CLAIMS ARE NOT PLAUSIBLE

### A. Conclusions Masquerading as Facts and Improper Deductions

The Investors seek to recover money they lost on investments they selected for their self-directed individual retirement accounts (IRAs). FAC ¶ 189. The investors complain that STC, the trustee/custodian for their self-directed IRAs, failed to protect them from their investment decisions. FAC ¶ 188. They claim STC owed them the following fiduciary duties:

1. the duty to limit the investment choices of the investors' self-directed IRAs to only prudent investments;
2. the duty to provide security for the investors' IRA investments in SIBL CDs; and
3. the duty to avoid accepting a fee from SIBL for the purchase of SIBL CDs for the investors' IRAs.

The issue is whether the complaint states facts, as opposed to conclusions and improper deductions, showing the plausible existence of any fiduciary duties owed by STC to the Investors.

### 1. STC's Duties as Trustee/Custodian of the Investors' IRAs

The Investors' adequately allege that STC was the trustee/custodian of their IRAs. An IRA is a "special type of trust account" in which the trustee/custodian "lacks most of the traditional powers and responsibilities that characterize a trustee." *Blankenship v. Liberty Life Assurance Co. of Boston*, 486 F.3d 620, 626 (9th Cir. 2007). Absent a contrary provision in the written agreement establishing the IRA, the accountholder "directs the investment choices," and "controls the flow of funds in and out of the account," while the trustee/custodian's duties are limited to ensuring:

> "that contributions to the account are made in cash; that the contributions not exceed the amount the individual is permitted to contribute each year; that the funds not be commingled with other property except in a common trust or investment fund; that the funds not be invested in life insurance contracts; and that the interest of an individual in the balance of his or her account be nonforfeitable."

*Id. See also Sammons v. Elder*, 940 S.W.2d 276, 282 (Tex. App. – Waco 1997, writ denied)(the depositor "possesses the sole authority to determine how the trust corpus may be invested"; *Colvin v. Alta Mesa Resources, Inc.*, 920 S.W.2d 688, 691 (Tex. App. – Houston [1st Dist.] 1996, writ denied)(the depositor "determines what assets the IRA will contain").

The complaint is silent as to the terms of the written agreements establishing the IRAs. There is, for example, no allegation the account agreements between STC and the Investors grant any discretion to STC in the investment of funds deposited in the IRAs or that STC retained the right to determine the suitability of the Investors' investment decision. In short, the complaint is devoid of factual allegations showing the Investors' IRAs were intended to or did establish a trust. *See Colvin*, 920 S.W.2d at 690-91 (rejecting contention that an IRA is a trust). Without such allegations, there is no factual basis to draw a reasonable inference that STC owed the traditional trust duties of prudence, loyalty and disclosure that are omitted from the Internal Revenue Code's list of duties imposed on an IRA trustee/custodian.

**2. The Plaintiffs' Conclusions of What Others Say Is Not Enough**

In their Response, Plaintiffs cite no legal authority to support the existence of any duty on the part of STC other than those imposed by the Internal Revenue Code. Nor do Plaintiffs cite to any language from an applicable IRA agreement. Instead, Plaintiffs point to allegations in their complaint which are nothing more than Plaintiffs own conclusions and deductions of what lawyers and regulators said.

Plaintiffs point to opinions offered by STC's outside lawyer advising STC on the alleged IRA Plan. Ted Martin, with the law firm of Jones Walker, and James Austin, with Adams & Reese, concluded STC was *not* a fiduciary." FAC ¶¶ 88, 97. Plaintiffs claim these opinions were false, but they cite no legal authority in their Response supporting their conclusions and deductions. Instead, they rely upon allegations they derived from the conclusions and deductions of the OFI. *See, e.g.,* FAC ¶¶ 99-100. But the regulators' alleged concerns and conclusions do not substitute for factual allegations or legal authority that would expand the duties owed by the IRA trustee/custodian beyond those specified for this "special type of trust account" in the Internal Revenue Code.

### 3. The BSW 1998 Memorandum is Central to Plaintiffs' Claims

Plaintiffs' allegations also rely upon their own conclusions and deductions derived from a BSW memorandum dated October 12, 1998. FAC ¶ 67. Plaintiffs elected to frame their complaint in reliance on this document. In assessing the sufficiency of their allegations, it is appropriate for the Court to consider this document – it is referred to in the complaint, it is central to Plaintiffs' claims, its authenticity is not in dispute, and BSW attached the document to its Motion as Exhibit 1 to BSW's Appendix. *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000).

Plaintiffs object to the Court's considering Exhibit 1, claiming it is not central to their claim(s). Response ¶ 43. BSW disagrees. The document is the only source alleged by Plaintiffs as authority that STC had the fiduciary duty to "obtain security for its investments in SIBL CDs (e.g., marketable bonds or other instruments from SIBL) in order to satisfy STC's 'prudent' investor obligations as a *fiduciary*, unless such security was specifically exempted by STC's trust agreements with clients." *See* FAC ¶¶ 67-69, 91. Likewise, it is essential to Plaintiffs' claims

that Reynaud and BSW had actual knowledge and awareness this duty existed and was breached, as these allegations are the linchpin relied upon to nudge the plausibility of Plaintiffs' claims to more than a "sheer possibility." *See* Response ¶¶ 22, 25(i), 82, 102, 115 and 137. Plaintiffs state no other basis in their complaint for the alleged duty, and they cite to no legal authority in the Response imposing the alleged duty.

If the Court determines it may review Exhibit 1 without converting the motion to one for summary judgment, the Court will no doubt agree Plaintiffs have made some unwarranted deductions.

Plaintiffs interpret Exhibit 1 as a response to a request from STC for an opinion on the alleged IRA Plan. FAC ¶ 67. Exhibit 1 makes no mention of IRAs. To conclude from Exhibit 1 that BSW was asked to or did opine on the alleged IRA Plan is an unwarranted deduction.

Plaintiffs interpret Exhibit 1 as establishing BSW's knowledge that "because STC was affiliated with SIBL, STC would need to obtain security for its investments in SIBL CDs (e.g., marketable bonds or other instruments from SIBL) in order to satisfy STC's trust agreements with clients." FAC ¶ 67. Plaintiffs build upon this allegation, stating:

> 68. Despite BSW's advice, STC *never* obtained the necessary security for its fictitious investments, and because of this, *STC never fulfilled its fiduciary obligations* to its IRA accountholders. Reynaud and BSW knew about these fiduciary failures. In Reynaud's capacity as a Director of STC and an attorney for SFG, he knew about BSW's October 12, 1998 opinion, and over the years he reviewed numerous financial reports and other documents showing that STC never obtained the requisite collateral for its holdings of SIBL CDs. But BSW's and Reynaud's knowledge of STC's breaches of fiduciary duties to its IRA accountholders never deterred BSW and Reynaud from helping SFG execute its IRA Plan…

Exhibit 1 makes clear the prudent investor obligations and duty to provide security apply to trusts governed by the Louisiana Trust Code. There is no allegation in the complaint that the Investors' account agreements meet the requirements to come within the Louisiana Trust Code,

and there is no citation to any legal authority in the Response that the IRAs are subject to the Louisiana Trust Code or its prudent investor/duty to secure obligations.

**4. The Complaint and Response are Deficient**

An IRA is treated as a trust in the Internal Revenue Code even if it is not a trust under state law. 26 U.S.C. § 208(h). Neither Texas nor Louisiana imply duties on the IRA trustee/custodian in excess of those set forth in the Internal Revenue Code merely because the Code labels the IRA a trust. *Colvin*, 920 S.W.2d at 690-91; *Matthews v. Bank One Corp.*, 25 So.3d 952 n.6 (La. App. 2d Cir. 2009).

The Plaintiffs have the burden to plead "enough facts to state a claim to relief that is plausible on its face" and to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This includes the burden to plead facts sufficient to show a fiduciary duty exists when a claim depends upon the existence of such a duty. *True v. Robles*, 571 F.3d 412, 417 (5th Cir. 2009)(affirming Rule 12(b)(6) dismissal against board members on grounds that the alleged fiduciary duty did not exist).

**B.     Aiding and Abetting Breach of Fiduciary Duty**

Although Plaintiffs devoted much of their complaint to alleging STC breached its fiduciary duties to the Investors, Plaintiffs do not claim STC's directors or lawyers aided and abetted any breach of fiduciary duty owed to the Investors by STC. Rather than address the issue of whether STC owed fiduciary duties, Plaintiffs elected to allege only that the Defendants aided and abetted SGC's breach of fiduciary duty as a registered investment adviser. Response ¶ 100.

But the claim for aiding and abetting requires more than identifying the existence of a fiduciary duty. Plaintiffs must also plead facts showing a plausible claim that "the defendant knew of the fiduciary relationship and was aware of his participation in the third party's breach

of its duty." *Darocy v. Abildtrup*, 345 S.W.3d 129, 138 (Tex. App. – Dallas 2011, no pet.). To meet this pleading requirement, Plaintiffs rely upon their allegations that "BSW and Reynaud *knew* that STC was breaching its fiduciary duty since 1998." Response ¶ 102. The well-pleaded factual allegations in the complaint do not establish a fiduciary duty on the part of STC owed to the Investors, let alone that BSW and Reynaud knew "STC was breaching its fiduciary duty since 1998." There is no allegation STC breached any duty imposed by the Internal Revenue Code, no sufficient allegation that STC owed any other duty, and certainly no plausible allegation that BSW or Mr. Reynaud knew STC or SGC was breaching any fiduciary duty owed to the Investors. Moreover, Plaintiffs concede that an aiding and abetting breach of fiduciary duty claim does not exist if the attorney acts within the scope of his legal representation. Response, ¶ 101. However, these are precisely the allegations Plaintiffs' assert against BSW and for this reason, this claim should be dismissed. Response, ¶¶ 21,22 and 26.

C.     **Aiding and Abetting Violations of the Texas Securities Act**

Plaintiffs agree the Investors' direct claims under the Texas Securities Act for aiding and abetting the sale of unregistered securities and sales of securities by unregistered dealers are barred by limitations with the exception of Mr. Mendez's claims for the purchase of a SIBL CD in September 2008. Response, ¶¶ 91-92. These claims, accordingly, should be dismissed with prejudice. Mr. Mendez's remaining claim should also be dismissed because it is based on the purchase of a SIBL CD directly through SGC that did not involve STC, Mr. Mendez's IRA, or the alleged IRA Plan. FAC ¶ 193.

All of Plaintiffs' claims for violation of the Texas Securities Act, including their common law claims for conspiracy to violate the Act, should be dismissed as implausible. The well-pleaded factual allegations in the complaint are insufficient to state a plausible claim that either

BSW or Mr. Reynaud had a general awareness of any role in a violation of the Act, provided substantial assistance in the alleged violation, or intended to deceive the Investors or acted with reckless disregard for the truth of the primary violator's misrepresentations.

**D.  Aiding and Abetting/Participation in a Fraudulent Scheme**

If the Court recognizes an aiding and abetting/participation in a fraudulent scheme, the claim should nevertheless be dismissed as implausible.  The well-pleaded factual allegations in the complaint are insufficient to state a plausible claim that either BSW or Mr. Reynaud knew of fraud allegedly perpetrated by Stanford or acted to aid the primary tortfeasor with knowledge of the object to be obtained. As indicated throughout its Motion to Dismiss and this Reply, Plaintiffs rely on conclusory statements and improper deductions to manufacture their claim, which is insufficient to survive a motion to dismiss.

**E.  Civil Conspiracy**

The conspiracy claims, including the alleged conspiracy to violate the Texas Securities Act, should be dismissed as implausible. The well-pleaded factual allegations in the complaint are insufficient to state a plausible claim that either BSW or Mr. Reynaud had the specific intent to agree to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means. Nothing Plaintiffs allege against BSW even intimates that BSW had any knowledge of any conspiracy or scheme to injure a third party.  *See Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*, 435 S.W.2d 854, 857 (Tex. 1968).

### III. Conclusion

The Committee's respondeat superior claim against BSW for breach of fiduciary duty against Mr. Reynaud should be dismissed without prejudice to avoid a multiplicity of suits.  The Investors' direct claims for violation of the Texas Securities Act for aiding and abetting the sale

of unregistered securities and sales of securities by unregistered dealers should be dismissed with prejudice as barred by limitations with the exception of Mr. Mendez's claims for the purchase of a SIBL CD in September 2008. All other claims should be dismissed because they fail to meet the pleading requirement of plausibility under Rule 8, let alone the more stringent requirements of Rule 9(b).

Respectfully submitted,

THOMPSON, COE, COUSINS & IRONS, L.L.P.

By:   /s/ Thomas A. Culpepper
         Thomas A. Culpepper
         State Bar No.  05215650
         Stephen C. Richman
         State Bar No. 24074952

Plaza of the Americas
700 N. Pearl Street, Twenty-Fifth Floor
Dallas, Texas 75201-2832
Telephone:    (214) 871-8200
Facsimile:     (214) 871-8209
E-Mail:          tculpepper@thompsoncoe.com
E-Mail:          srichman@thompsoncoe.com

**COUNSEL FOR DEFENDANT
BREAZEALE, SACHSE & WILSON, LLP**

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 19, 2012, a true and foregoing copy of the foregoing document was filed electronically with the Clerk of the Court, using the CM/ECF system, which sent notification of such filing to all parties and counsel in this case.

   /s/ Thomas A. Culpepper
        Thomas A. Culpepper