IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| THE OFFICIAL STANFORD INVESTORS COMMITTEE; and PHILIP A. WILKINSON, and HORACIO MENDEZ, individually and on behalf of a class of all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> ADAMS AND REESE, LLP; JAMES AUSTIN; BREAZEALE, SACHSE & WILSON, LLP; CLAUDE REYNAUD; J.D. PERRY; REBECCA HAMRIC; MICHAEL CONTORNO; LOUIS FOURNET; JAY COMEAUX; CORDELL HAYMON; THOMAS FRAZER; ZACK PARRISH; DANIEL BOGAR; and JASON GREEN, <br><br> Defendants. | Case No. 3:11-cv-0329-N |

## JOINT REPORT

Pursuant to an Order, dated July 9, 2014 (ECF No. 112) (the "**Order**") entered in the above-captioned action (the "**Action**"), Plaintiffs The Official Stanford Investors Committee ("**OSIC**"), Philip A. Wilkinson, and Horacio Mendez, individually and on behalf of a class of all others similarly situated (the "**Investors**") (collectively, "**Plaintiffs**") and Defendants Adams and Reese LLP and its partner James Austin  (together "**A&R**"), Breazeale, Sachse & Wilson, LLP ("**BSW**"), Claude Reynaud, and J.D. Perry (collectively, "**Defendants**"), through their undersigned counsel, conferred by telephone on July 28, 2014.  This Joint Report is submitted to address the issues discussed during the parties' conference, and the topics set forth in the Order.

## I.  PENDING DISMISSAL MOTIONS

A&R, BSW, and Mr. Reynaud have fully-briefed dismissal motions ripe for disposition

(ECF Nos. 22, 68, 71) (collectively, the "**Dismissal Motions**").  The Dismissal Motions in this Action have been *sub judice* since September 2012, and have not been referred to Judge Frost or Judge Koenig.

The parties agree that resolution of the Dismissal Motions will lend greater clarity to the issues remaining for discovery, if any, and shape the scope and extent of further proceedings.

## II.   ABEYANCE OF DISCOVERY REQUESTS SERVED IN THIS ACTION

The parties, with the exception of A&R, have been engaged in discovery in a companion case pending in this Court captioned *Janvey v. Adams & Reese, LLP et al*, Civ. No. 12-CV-495 (the "**Receiver Action**").  A&R was dismissed from the Receiver Action by Order dated September 11, 2013 (Receiver Action ECF No. 58) (the "**Receiver Action Order**").  A&R, however, has agreed with Plaintiffs, through counsel, that deposition testimony in the Receiver Action can be used in this Action, subject to the terms of a joint stipulation filed on April 17, 2014 (ECF No. 105).

Given that discovery in the Receiver Action is underway,[1] and given the overlap in factual allegations in this Action and the Receiver Action, the parties have agreed to refrain from serving discovery requests in this Action prior to the conclusion of fact discovery in the Receiver Action.  At that time, the parties will confer as to what additional discovery they anticipate is necessary for this Action.

---

[1]     A trial date is presently set in the Receiver Action for February 2, 2015.  (Receiver Action ECF No. 111)

III.    **BRIEF STATEMENT OF THE NATURE**
        **OF THE CASE AND CONTENTIONS OF PARTIES**

   A.      **Plaintiffs' Contentions**

   Plaintiffs filed the currently pending First Amended Complaint ("FAC") almost three (3) years ago in July 2011 (Doc. No. 19), alleging that Defendants aided and abetted Stanford's Houston-based investment adviser company, Stanford Group Company ("SGC"), to dominate and control Louisiana-based Stanford Trust Company ("STC") and use STC as a pawn to enable SGC to sell the unregistered and fraudulent SIBL CD securities to the IRA accounts of unwitting investors for which STC served as trustee.  FAC, at ¶¶ 59-153.   Plaintiffs contend that SGC breached its fiduciary duties to its investor clients, including Plaintiffs and the Class, by advising them to invest their retirement savings in the SIBL CDs via their IRA accounts held in trust by SGC's sister company, STC, without ever having performed any due diligence on SIBL or how SIBL used the money.   Plaintiffs contend that SGC used STC in a conflicted relationship wherein both entities were entirely reliant for their very existence on fee income derived from the sale of the SIBL CDs.

   Specifically, Plaintiffs allege that Defendants Perry and Fournet were former Presidents of STC who "laid down" on the job and allowed STC to be dominated and used by SGC as a tool to perpetuate Stanford's sales of the CDs to investors' IRA plans.  FAC, at ¶¶ 66, 83, 105 112, 114, 116, 151-153.  Plaintiffs allege that the law firm Defendants A&R and BSW (along with BSW partner Reynaud) engaged in conflicts of interest by serving as counsel to ***both*** SGC and STC, and that in that capacity the lawyers helped SGC and STC to create a legal smokescreen behind which SGC and STC could hide and mislead Louisiana regulators about STC's business practices so that SGC could continue to sell SIBL CDs to investors' IRA plans.  FAC at ¶¶ 61-64, 69, 89-92, 94, 95-99, 118, 124-125, 133, 140-141, 146, 148-150.   Plaintiffs allege that

3

Reynaud's actions were particularly egregious given his heavily conflicted, multiple roles as a Director of STC, owner of equity in STC, and as counsel to both SGC and STC.  *Id.* at ¶¶ 68-72, 83, 89, 105-106, 151-153.  Plaintiffs have brought claims against all Defendants for, *inter alia*, (1) aiding and participating in SGC's breaches of fiduciary duty owed to Plaintiffs as an Investment Adviser [FAC ¶199-200];[2] and (2) aiding and abetting SGC's violations of the Texas Securities Act for, *inter alia*, selling unregistered securities [FAC ¶201-204].

**PLAINTIFFS OBJECT TO DEFENDANTS' USE OF THIS RULE 26 REPORT TO RE-BRIEFAND RE-ARGUE ISSUES RAISED IN THEIR RESPECTIVE MOTIONS TO DISMISS, AND PLAINTIFFS WILL NOT BURDEN THE COURT WITH THEIR RESPONSIVE ARGUMENTS AS SAID ISSUES HAVE BEEN FULLY BRIEFED FOR THE COURT**.

### B.      A&R's Contentions

The sparse allegations concerning A&R in Plaintiffs' First Amended Class Action Complaint (ECF No. 19) (the "**FAC**") describe only routine legal work of outside counsel on four discrete occasions over seven years.  Critically, Plaintiffs do not allege that A&R was aware of the fraud perpetrated by Allen Stanford or his co-conspirators, or that the law firm intentionally participated in a fraudulent scheme.  As set forth more fully in the briefing on A&R's dismissal motion (*see* ECF Nos. 23 & 79), Plaintiffs fail to state any claim against A&R because, *inter alia*:

- **Louisiana Law Forecloses All Claims Against A&R.**  Plaintiffs have never disputed that all claims against A&R in this Action are foreclosed by the application

---

[2]      In April 2013, this Court granted summary judgment for the SEC against SGC for violations of its duties as a registered Investment Adviser.  *See* Order, Case 3:09-cv-00298-N. Doc. No. 1858, at pps. 8-9.

of Louisiana law.  (*See* ECF No. 23 at 12-17; ECF No. 79 at 1-3).  Further, this Court already conducted a choice-of-law analysis in the Receiver Action—which Plaintiffs concede involves "identical questions of fact" (ECF No. 98 at 10)—and concluded that Louisiana law applied and, therefore, all claims against A&R were dismissed (Receiver Action Order 18-23).  The application of Louisiana law dictates dismissal of all claims against A&R in this Action.

- **Texas Qualified Immunity Is Clear on the Face of the FAC.**  Even assuming *arguendo* that Texas law applies, it is clear from the pleadings that the Texas rule of qualified immunity vitiates all of Plaintiffs' claims against A&R.  (*See* ECF No. 23 at 17-19; ECF No. 79 at 3-5).  Each element of the qualified immunity rule is established on the face of the FAC: (1) this is a civil proceeding; (2) Plaintiffs were not A&R clients; and (3) the challenged conduct required "the office, professional training, skill, and authority of an attorney."  *See Reagan Nat'l Adv. Of Austin, Inc. v. Hazen*, No. 03-05-00699-CV, 2008 WL 2938823, at *2 (Tex. App.—Austin July 29, 2008).

- **Plaintiffs Do Not State A Texas Securities Act Claim.**  Again, even assuming *arguendo* that Texas law applies, Plaintiffs do not adequately allege A&R's (1) "general awareness of [their] role in the violation," (2) "substantial assistance in the violation," and (3) "inten[t] to deceive the plaintiff or . . . reckless disregard for the truth of the primary violator's misrepresentations."  *See, e.g.*, *Doresey v. Portfolio Equities, Inc.*, 540 F.3d 333, 344 (5th Cir. 2008).  The TSA claims should be dismissed.  (*See* ECF No. 23 at 23-29; ECF No. 79 at 5-12).

- **Plaintiffs' Failure to Plead Causation is Clear on the Face of the FAC.** Plaintiffs also fail to plead proximate cause, under the law of either Texas or Louisiana. (*See* ECF No. 23 at 19-23; ECF No. 79 at 14-16). Plaintiffs nowhere connect A&R's alleged wrongdoing to the harm allegedly suffered. For example, the allegations against A&R partner Jim Austin involve legal work performed *after* STC had already stopped selling SIBL CDs and, thus, could not possibly have proximately caused any of Plaintiffs alleged harm. (*See* FAC ¶¶139-40). Plaintiffs' failure to plead proximate causation is fatal.

- **A&R's Other Dispositive Arguments Are Clear On the Face of the FAC.** Plaintiffs' allegations against A&R also fail to meet the heighted pleading standards of Rule 9(b). (*See* ECF No. 23 at 32-34; ECF No. 79 at 16-17). As an initial matter, the allegations impermissibly lump all Defendants together in the pleadings and, equally fatal, Plaintiffs do not allege facts that support any inference, let alone a strong inference, that A&R was aware of Stanford's fraud. (*See id.*). Moreover, Plaintiffs assert additional causes of action—including aiding and abetting breach of fiduciary duty (Count One) and aiding and abetting fraud (Count Three)—that are not recognized under either Louisiana or Texas law. (*See* ECF No. 23 at 16-17, 29-31; ECF No. 79 at 1-2, 12-13).

In the event Plaintiffs' complaint survives A&R's dispositive legal defenses, A&R contends that Plaintiffs will be unable to make the mandatory threshold showing that this Action should proceed as a class action under Fed. R. Civ. P. 23. A&R joins all Defendants in advocating that class certification discovery, and briefing, if any, should be bifurcated from

merits discovery in this Action should this Action proceed beyond the pending Dismissal Motions.

### C.    BSW's Contentions

Despite the fact that BSW performed minimal legal work for STC, and that its partner, Reynaud, served as an outside director of STC, Plaintiffs allege that BSW was in a position to discover the massive fraud perpetrated by Allen Stanford.   However, when the FAC's conclusions and unwarranted deductions are ignored, as they should be, the facts stated therein show that: i) neither BSW nor Reynaud had actual knowledge of the Stanford Ponzi scheme; ii) BSW did very little in connection with Stanford; iii) nothing BSW did breached any duty owed to Stanford's creditors; and iv) nothing BSW did proximately caused any damage to Stanford's creditors.   Critically, as with A&R above, Plaintiffs fail to allege that BSW was aware of the fraud perpetrated by Allen Stanford or his co-conspirators, or that the law firm intentionally participated in a fraudulent scheme.

As set forth more fully in the briefing on BSW's dismissal motion (*See* ECF Nos. 68 & 69), Plaintiffs fail to state any claim against BSW because, *inter alia*:

- **Failure to Comply with Rule 9(b).**  The Investors' allegations against BSW fail to meet the heightened pleading standards of Rule 9(b).  (*See* ECF No. 69).   The Investors do not allege facts that support any inference—let along a strong inference—that BSW knew of Stanford's fraud, provided material aid to Stanford to commit the fraud, or had the requisite intent to defraud the Investors.  (*See id.*).

- **Louisiana Law Does Not Recognize a Claim for Aiding and Abetting Liability.**  This Court already conducted a choice-of-law analysis in the Receiver Action— which Plaintiffs concede involves "identical questions of fact" (*See* ECF No. 98 at

10)—and concluded that Louisiana law applied. (*See* Receiver Action Order at 18-23). The application of Louisiana law dictates dismissal of the Investors' claim for aiding and abetting breach of fiduciary duty as Louisiana does not recognize causes of action for aiding and abetting absent a conspiracy. Because the Investors have not adequately pled a conspiracy, their aiding and abetting breach of fiduciary duty claim also fails. (*See* ECF No. 69 at 17-18); *see Guidry v. Bank of LaPlace*, 661 So.2d 1052, 1058 (La. App. 4th Cir. 1995). Moreover, pursuant to the terms of the IRA agreements, STC did not owe a fiduciary duty to the investors and so STC is not liable to the investors for any alleged breach. Finally, even if Texas law applies, dismissal is warranted because Texas does not recognize a cause of action for aiding and abetting a breach of fiduciary duty based on the rendition of legal advice to an alleged tortfeasor client. (*See* ECF No. 69 at 17-18); *Span Enters v. Wood,* 274 S.W.3d 854, 858-59 (Tex. App.-Houston [1st Dist.] 2008, no pet.).

- **Plaintiffs Do Not State A Texas Securities Act Claim.** Assuming *arguendo* that Texas law applies, the Investors' TSA claims fail. (*See* ECF No. 69 at 18-22). *First*, the Investors fail to satisfy the heightened pleading requirements of Rule 9(b)—the Investors plead no facts to show that: i) BSW had a "general awareness" of its role in the alleged Stanford Ponzi scheme; ii) BSW provided substantial assistance to STC, SGC and SIBL to facilitate the alleged fraud; and iii) acted intentionally or with reckless disregard for the truth. (*See id.*). *Second*, the Investors fail to adequately plead scienter. (*See id.* at 19-20); *see Sterling Trust Co. v. Adderley*, 168 S.W.3d 835, 842 (Tex. 2005). Rather, the Investors' allegations concern nothing more than the minimal legal work performed by BSW. (*See* ECF No. 69 at 20). *Third*, with one

exception, the TSA claims are barred by the applicable three year statute of limitations for which there is no tolling provision.  (*See id.* at 20-21); Tex. Civ. Stat. Ann. Art. 581-33(H)(1)(a).  *Fourth*, the TSA does not recognize a cause of action for conspiracy.  (*See* ECF No. 69 at 22); *In re Enron Corp. Sec. Derivative & "ERISA" Litig.*, 490 F. Supp. 2d 784, 790 (S. D. Tex. 2007).  Additionally, the claim that BSW aided and abetted the sale of unregistered securities is preempted by the National Securities Markets Improvement Act of 1996 ("**NSMIA**") and the claim that BSW aided and abetted the sale of securities by unregistered dealers fails because the Investors admit SGC was a registered broker/dealer.  (*See* ECF No. 69 at 21); (*See* FAC ¶24).

- **Texas Law Does Not Recognize a Cause of Action for Aiding and Abetting Fraud.**  Again, assuming *arguendo* that Texas law applies, Texas has not recognized a claim for aiding and abetting a fraudulent scheme.  (*See* ECF No. 69 at 22); *see Juhl v. Airington*, 936 S.W.2d 640, 644 (1997).  When, as here, the claim is coupled with a conspiracy claim based on the same underlying facts, the aiding and abetting claim is considered "redundant and unnecessary."  *See In re Enron Corp. Sec. Derivative & "ERISA" Litig.*, Nos. H-01-3624 et al., 2006 WL 3716669, at *8 n.7 (S.D. Tex. Dec. 12, 2006), *aff'd*, 535 F.3d 325 (5th Cir. 2008).

- **Plaintiffs Fail to State a Claim for Civil Conspiracy.**  The Investors offer no facts to support the requisite elements of conspiracy claim. (*See* ECF No. 69 at 23-24).  The FAC does not demonstrate that BSW possessed specific intent to further any of the fraud alleged against Stanford. (*See id.*).  Nor do the Investors show that BSW intended to accomplish any unlawful purpose through the

performance of legal work. (*See id.*). The facts alleged are insufficient to rise to the level of plausibility that BSW had knowledge of the Stanford Ponzi scheme, had knowledge of the scheme's unlawful purpose, or had meeting of the minds in the scheme's object or purpose. (*See id.*).

- **OSIC's Claims against BSW also Fail:** OSIC does not state a claim under the Texas Uniform Fraudulent Transfer Act ("**TUFTA**") because OSIC does not allege that the companies paying BSW made such payments "with actual intent to hinder, delay, or defraud" any creditor of OSIC. (*See* ECF No. 69 at 14-16). OSIC's unjust enrichment claim and money had and received claims fail because there is no evidence that STC, SGC or SFG did not receive reasonably equivalent value for the fees paid to BSW. (*See id.*).

In the event Plaintiffs' claims survive BSW's dispositive legal defenses, BSW contends that Plaintiffs will be unable to make the mandatory threshold showing that this Action should proceed as a class action under Fed. R. Civ. P. 23. BSW joins all Defendants in advocating that class certification discovery, and briefing, if any, should be bifurcated from merits discovery in this Action should this Action proceed beyond the pending Dismissal Motions.

### D.    Claude Reynaud's Contentions

Plaintiffs' convoluted allegations against Reynaud essentially boil down to one theory: Reynaud, either through his role as outside director or through limited legal work performed by him and BSW, was in a position to discover the massive fraud committed by Stanford. Yet, he either failed to discover it despite numerous "red flags" or turned a blind eye because he benefited from the fraud in the form of director's fees and legal fees.

Plaintiffs' "theory," however, is unsupported by the facts alleged and the legal theories advanced. The facts demonstrate that Reynaud had no actual knowledge of the Stanford Ponzi scheme, and there is no dispute that the Ponzi scheme was only successful because the number of people who actually knew about the fraud was limited to a handful of Stanford's trusted friends. And to perpetuate the fraud, those trusted friends reverse engineered SFG's, SGC's and SIBL's financial statements in order to project an image of strong, safe, and successful companies. Plaintiffs' theory that Reynaud and BSW missed obvious "red flags" (which are now only apparent, if at all, in hindsight with the benefit of knowing there was, in fact, a Ponzi scheme) further fails because those same "red flags" were ignored or missed by regulators, investors and a multitude of other outside professionals.

Further, Reynaud's miniscule and unknowing role in the Ponzi scheme did not ultimately cause damage to the investors. In fact, it is unlikely that if Reynaud had identified a Ponzi scheme based on the few bits of isolated information doled out over his 9 years as an outside director, any actions he could have taken to alert STC, to whom he owed a fiduciary duty, would have affected the <u>Stanford Financial Group</u> orchestrated Ponzi scheme.

As set forth more fully in the briefing on Reynaud's dismissal motion (*see* ECF Nos. 71, 72), Plaintiffs fail to state any claim against Reynaud because, *inter alia*:

- **Failure to Comply with Rule 9(b).** Plaintiffs' allegations against Reynaud fail to meet the heighted pleading standards of Rule 9(b). (*See* ECF No. 72 at 14-18). Primarily, Plaintiffs do not allege facts that support any inference, let alone a strong inference, that Reynaud knew of Stanford's fraud, provided material aid to Stanford to commit the fraud, or had the requisite intent to defraud. (*See id.*). The allegations

that Reynaud should have known something was amiss are insufficient to comply with Rule 9(b).

- **Louisiana Law Does Not Recognize a Claim for Aiding and Abetting Liability.** This Court already conducted a choice-of-law analysis in the Receiver Action— which Plaintiffs concede involves "identical questions of fact" (ECF No. 98 at 10)— and concluded that Louisiana law applied. (Receiver Action Order 18-23). The application of Louisiana law dictates dismissal of Plaintiffs' claim for aiding and abetting breaches of fiduciary duty as Louisiana does not recognize causes of action for aiding and abetting absent a conspiracy. Because the Plaintiffs have not adequately pled a conspiracy, their aiding and abetting breach of fiduciary claim also fails. *See Guidry v. Bank of LaPlace*, 661 So.2d 1052, 1058 (La. App. 4th Cir. 1995). (*See* ECF No. 72 at 19-22). Moreover, pursuant to the terms of the IRA agreements, STC did not owe fiduciary duties to the investors and so STC is not liable to the investors for any alleged breach. Absent a cause of action for breach of fiduciary duty, no aiding and abetting claim can exist. Further, even if Texas law applies, dismissal is warranted because Texas does not recognize a cause of action for aiding and abetting a breach of fiduciary duty based on the rendition of legal advice to an alleged tortfeasor client. *Span Enters v. Wood,* 274 S.W.3d 854, 858-59 (Tex.App.—Houston [1st Dist.] 2008, no pet.).

- **Plaintiffs Do Not State A Texas Securities Act Claim.** Again, even assuming *arguendo* that Texas law applies, the TSA claims should be dismissed. (*See* ECF No. 72 at 22-23). There is no claim for conspiracy under the TSA, accordingly Reynaud cannot be a "co-conspirator" based on alleged violations of the TSA. *In re Enron*

*Corp. Sec. Derivative & "ERISA" Litig.*, 490 F. Supp. 2d 784, 790 (S. D. Tex. 2007)  Additionally, the claim that Reynaud aided and abetted the sale of securities by unregistered dealers fails because Plaintiffs admit SGC was a registered broker/dealer (FAC ¶ 24) and the CD's were sold through SGC. Last, the claim that Reynaud aided and abetted the sale of unregistered securities is preempted by the NSMIA. Further, with one exception, the TSA claims are barred by the applicable three year statute of limitations for which there is no tolling provision Tex. Civ. Stat. Ann. Ar. 581-33(H)(1)(a).

- **Texas Law Does Not Recognize a Cause of Action for Aiding and Abetting Fraud.**  Again, assuming *arguendo* that Texas law applies, Texas has not recognized a claim for aiding and abetting a fraudulent scheme. *See Juhl v. Airington*, 936 S.W.2d 640, 644 (1997). (*See* ECF No. 72 at 24).   When, as here, the claim is coupled with a conspiracy claim based on the same underlying facts, the aiding and abetting claim is considered "redundant and unnecessary." *See In re Enron Corp. Sec. Derivative & "ERISA" Litig.*, Nos. H-01-3624 et al., 2006 WL 3716669, at *8 n.7 (S.D. Tex. Dec. 12, 2006), *aff'd*, 535 F.3d 325 (5th Cir. 2008).

- **Plaintiffs Fail to State a Claim for Civil Conspiracy.** Plaintiffs offer no facts to support the requisite elements of conspiracy claim. (*See* ECF No. 72 at 25). The Complaint does not demonstrate that Reynaud possessed specific intent to further any of the fraud alleged against Stanford.  Nor do Plaintiffs show that Reynaud intended to accomplish any unlawful purpose through the performance of legal work. The facts alleged are insufficient to rise to the level of plausibility that Reynaud had knowledge of the Stanford Ponzi scheme, had knowledge of the

scheme's unlawful purpose, or had meeting of the minds in the scheme's object or purpose.

- **The OSIC's claims against Reynaud also suffer from deficiencies:** The OSIC's claims under TUFTA are fatally flawed because the Plaintiffs have made no allegations that the companies paying Reynaud made such payments with actual intent to hinder, delay or defraud any creditor of OSIC. Moreover, the payments were made for legitimate legal work performed by the BSW and Reynaud's monthly director duties. For these same reasons, OSIC's claims for unjust enrichment and money had and received fail. Texas jurisprudence will not support these claims absent a showing that STC, SGC, or SFG did not receive a reasonably equivalent value for the fees paid to BSW or Reynaud.

In the event Plaintiffs' claims survive Reynaud's dispositive legal defenses, Reynaud contends that Plaintiffs will be unable to make the mandatory threshold showing that this Action should proceed as a class action under Fed. R. Civ. P. 23. Reynaud joins all Defendants in advocating that class certification discovery, and briefing, if any, should be bifurcated from merits discovery in this Action should this Action proceed beyond the pending Dismissal Motions.

### E.    J.D. Perry's Contentions

Defendant Perry contends that TUFTA does not apply to this matter. Defendant Perry further contends that he acted in good faith and provided a reasonably equivalent value for the salary and bonuses he received while working for STC. As such, Plaintiffs' claims for disgorgement fail as a matter of law.

Defendant Perry further contends that Louisiana law applies to the fiduciary duty claims set forth in this matter against the Defendants.  Based on the fact that Louisiana law applies, Plaintiff cannot maintain any causes of action against Defendants for aiding and abetting a breach of fiduciary duty or breach of fiduciary duty.

To the extent that Texas law may apply to the causes of action in this matter, Plaintiffs have failed to state a viable claim against Defendant Perry related to any violation of Texas securities law.  Plaintiffs do not adequately allege that Defendant Perry was aware of his role in the violation, that he substantially assisted in any securities violation, or that he intended to deceive or had reckless disregard for any misrepresentations made by the culpable party.  *See, e.g.*, *Doresey*, 540 F.3d at 344.  As a result, Plaintiffs' claims fail.

Defendant Perry further contends that Plaintiffs' claims are barred by the applicable statute of limitations and that the discovery rule pleaded by the Plaintiffs is inapplicable. Defendant Perry's connection to these matters concluded in 2006, more than five years before the Plaintiffs filed these causes of action against him.  Under no set of facts that can be reasonably pled would the Plaintiffs be entitled to maintain a cause of action against him under the theories of liability.

Defendant Perry further contends Plaintiffs will be unable to make the mandatory threshold showing that this Action should proceed as a class action under Fed. R. Civ. P. 23.  As such, Defendant Perry joins all Defendants in advocating that class certification discovery, and briefing, if any, should be bifurcated from merits discovery in this Action should this Action proceed beyond the pending Dismissal Motions.

## IV.    THE STATUS OF SETTLEMENT DISCUSSIONS

The parties in the Receiver Action held a mediation session on June 30, 2014, in Dallas Texas, with mediator Christopher Nolland.  Those settlement discussions included the possibility of settling both the Receiver Action and this Action for defendants who are parties in both cases. There have been no settlements, to date, and another mediation session in the Receiver Action is presently scheduled for September 3, 2014.

A&R—having previously been dismissed from the Receiver Action—has not participated in any settlement discussions with Plaintiffs to date.

## V.    POSSIBLE JOINDER OF ADDITIONAL PARTIES

The parties do not anticipate the joinder of additional parties.

## VI.    ANY ANTICIPATED CHALLENGES TO JURISDICTION OR VENUE

The parties do not anticipate any challenges to jurisdiction or venue.

## VII.    THE DATE (MONTH/YEAR) BY WHICH THE CASE WILL BE READY FOR TRIAL AND ESTIMATED LENGTH OF TRIAL

The parties presently estimate that the case could be ready for trial by February 1, 2016 and would last approximately three weeks.  The parties disagree, however, with respect to whether class certification discovery, and briefing, should be bifurcated from merits discovery.

### A.    Plaintiffs Advocate Contemporaneous Class and Merits Discovery

Plaintiffs believe that discovery as to of both merits and class certification issues should proceed contemporaneously given the U.S. Supreme Court's decision in *Wal—Mart Stores, Inc. v. Dukes,* U.S., 131 S.Ct. 2541 (2011).  In *Dukes*, the Supreme Court held that class certification issues, particularly proof of the "commonality" element, "necessarily overlaps" with the merits of the case, and that courts are required to delve into the merits of the claims at the class certification stage as part of their "rigorous analysis" of class certification, precisely because "the

class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Id.*, at 2551-2552 (citing *General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 157-158, n. 13, 102 S.Ct. 2364, 72 L., Ed.2d 740 (1982).[3]  The Supreme Court compared this to the intertwining of merits with the resolution of preliminary matters like personal jurisdiction.  *Id.*, at 2552.

Based on the *Dukes* decision, federal district courts no longer require bifurcated discovery, but instead allow class certification and merits discovery to proceed as one.  See, e.g., *Chen-Oster v. Goldman, Sachs & Co.*, 2013 WL 6501184 at *1 (S.D.N.Y, 2013)("discovery should not be strictly bifurcated because, in the wake of [*Dukes*], class issues are inextricably intertwined with the merits"); *In re Community Bank of Northern Virginia Mortgage Lending Practices Litigation*, 2011 WL 4382942 at *3 (W.D. Penn. 2011)(notifying the parties that, based on *Dukes*, discovery would not be bifurcated and that the court's class certification analysis may entail a preliminary inquiry into the merits).

In this case, class certification issues definitely overlap with the merits, and therefore discovery should proceed as to class certification and merits.  For example, here are just some of the overlapping commonality issues that the Court will need to consider as part of the class certification determination:

1. Whether Stanford was (and was marketed as) a U.S. financial services group of companies based in and controlled from Houston, Texas, thereby triggering application of the Texas Securities Act ("TSA") on a Class-wide basis.[4]

---

[3]    Prior to the Supreme Court's decision in *Dukes*, the Third Circuit reached a similar conclusion as to the overlap between class and merits issues.  *In re Hydrogen Peroxide Antitrust Litigation*, 552 F. 3d 305, 316-320 (3rd Cir. 2009).

[4]    *Citizens Ins. Co. of Am. v. Daccach*, 217 S.W.3d 430 (Tex. 2007)(TSA applies extraterritorially where significant wrongful acts pertaining to the securities transactions took place in the State);  *Gutierrez v. Cayman Islands Firm of Deloitte & Touche*, 100 S.W.3d 261, 273 (Tex. App. - San Antonio 2002, pet. dism'd)("Texas has a strong interest in assuring the integrity of investment firms that choose to operate in the state, and we cannot permit this state to be

2. Whether SGC engaged in a scheme to use a "captive" trust company, STC, to serve as the custodian for investors' IRA plans so that SGC could sell unregistered SIBL CDs to said IRA plans (the "IRA scheme").

3. Whether the IRA scheme was devised, implemented, managed and controlled from Houston, Texas.

4. Whether Stanford engaged in a regulatory evasion scheme to mislead Louisiana regulators about the IRA scheme, and whether Stanford omitted to disclose the existence of said regulatory evasion scheme to investors;

5. Whether Stanford's IRA scheme and regulatory evasion scheme (and omission to disclose same) constitute primary violations of the Texas Securities Act;

6. Whether Stanford's IRA scheme and regulatory evasion scheme (and omission to disclose same) constitute a breach of fiduciary duty owed by SGC to Plaintiffs and the Class of IRA investors;

7. Whether SGC breached its fiduciary duties to Plaintiffs and the Class of IRA investors by advising them to purchase the SIBL CDs for their IRA plans.

8. Whether Defendants joined in, participated in, and aided and abetted Stanford's IRA scheme and regulatory evasion scheme, including SGC's breaches of fiduciary duties as an investment adviser and violations of the TSA (with concomitant questions of:)
   a. Whether Defendants were "generally aware" of their role in Stanford's primary violations of the TSA and were aware of SGC's breaches of fiduciary duty;
   b. Whether Defendants rendered "substantial assistance" in the violations;
   c. Whether Defendants intended to help Stanford deceive Plaintiffs or acted with reckless disregard of the truth of Stanford's violations;[5]

---

used as a base of operations by corporations seeking shelter from our securities laws"); *Deloitte & Touche Netherlands Antilles v. Ulrich*, 172 S.W. 3d 255, 262 (Texas App. – Beaumont 2005)(same).

[5]     Importantly, reliance is not an element of Plaintiffs' TSA claims because the TSA does not require an investor to prove he relied on the alleged misrepresentations or omissions." *In re Westcap Enter.*, 230 F.3d 717, 726 (5th Cir. 2000); *In re Enron Corp. Sec., Deriv. & ERISA Litig.*, 490 F. Supp. 2d 784, 791, 821 (S.D. Tex. 2007) (reliance is not an element of an aider claim under the Act).

Finally, Plaintiffs believe class and merits discovery should proceed contemporaneously given that the Committee is pursuing claims that are not affected by any class action issues, and therefore the Committee should be allowed to pursue merits discovery immediately, such that it would be most efficient for _all_ discovery to move forward simultaneously.

### B.   Defendants Advocate Bifurcated Discovery

Defendants do not believe that Plaintiffs can satisfy their burden to establish the requirements for proceeding as a class action under Fed. R. Civ. P. 23.  Among other things, Plaintiffs' claims are predicated on individualized investment decisions made based on thousands of face-to-face conversations and relationships between putative class members and Stanford brokers and employees in multiple jurisdictions, defeating commonality, typicality and predominance within Fed. R. Civ. P. 23(a)(2)-(3) and (b)(3).  Questions that need to be explored in class discovery include:

1.  Whether Plaintiffs can establish the existence of any common questions that are "apt to drive the resolution of the litigation" given the multitude of dissimilarities within the proposed class and each individual putative class members' investment decisions. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).

2.  Whether individualized issues including reliance, causation and damages will "inevitably overwhelm" this action, defeating predominance and superiority. *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433 (2013); *Unger v. Amedisys Inc.*, 401 F.3d 316, 321 (5th Cir. 2005) ("If the circumstances surrounding each plaintiff's alleged reliance on fraudulent representations differ, then reliance is an issue that will have to be proven by each plaintiff, and the proposed class fails Rule 23(b)(3)'s predominance requirement.").

3.  Whether, to the extent Louisiana law is held not to apply to bar the claims asserted in this Action, application of multiple states' laws precludes certification. *Casa Orlando Apartments, Ltd. v. Fed. Nat'l Mortg. Ass'n*, 624 F.3d 185, 194 (5th Cir. 2010) ("In a multi-state class action, variations in state law may swamp any common issues and defeat predominance.") (quoting *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 741 (5th Cir. 1996)).

4. Whether the named Plaintiffs are adequate representatives, and whether their state law claims are typical of the class they seek to represent. *See* Fed. R. Civ. P. 23(a)(3)-(4).

Defendants respectfully submit that it is far more efficient and economical to proceed with discovery directed to the potentially dispositive matter of class certification before commencing costly fact and expert discovery. *See, e.g.*, Manual for Complex Litig. (4th) § 21.14 (2004) ("[I]n cases that are unlikely to continue if not certified, discovery into aspects of the merits unrelated to certification delays the certification decision and can create extraordinary and unnecessary expense and burden."); *Stewart v. Winter*, 669 F.2d 328, 331 (5th Cir. 1982) ("[W]e think it imperative that the district court be permitted to limit pre-certification discovery to evidence that, in its sound judgment, would be 'necessary or helpful' to the certification decision."); *see also Harris v. comScore, Inc.*, No. 11 CV 5807, 2012 WL 686709, at *3 (N.D. Ill. Mar. 2, 2012) (Bifurcating class and merits discovery because the latter could delay class certification briefing and "[a]ny delay would frustrate the court's effort to certify the action as a class action [a]t an early practicable time, as is mandated by Rule 23(c)(1)(A).").

## VIII.   THE DESIRABILITY OF AND TIMING OF ADR

As discussed in Part IV, above, parties in the Receiver Action have already engaged in mediation efforts.  Plaintiffs' counsel has indicated that it is amenable to mediation with A&R. A&R is not opposed to ADR; however, A&R believes that it would be more efficient and economical to await adjudication of its dismissal motion in advance of ADR.

## IX.   ANY OBJECTIONS TO DISCLOSURE UNDER RULE 26(a)(1)

The parties have agreed to adjourn the time to serve initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1)(D).  The parties agree that initial disclosures shall be due on October 10, 2015, subject to modification by counsel.

RESPECTFULLY SUBMITTED this 11th day of August, 2014.

CASTILLO SNYDER, P.C.

By: */s/ Edward C. Snyder*
Edward C. Snyder (esnyder@casnlaw.com)
Jesse R. Castillo (jcastillo@casnlaw.com)
300 Convent Street, Suite 1020
San Antonio, Texas 78205
(210) 630-4200
(210) 630-4210 (Facsimile)

*Attorneys for Plaintiffs*

NELIGAN FOLEY, LLP

By: */s Nicholas A. Foley*
Nicholas A. Foley (nfoley@neliganlaw.com)
Douglas J. Buncher
(dbuncher@negliganlaw.com)
325 N. St. Paul, Suite 3600
Dallas, Texas 75201
(214) 840-5320
(214) 840-5301 (Facsimile)

*Attorneys for Plaintiffs*

MORGENSTERN & BLUE, LLC

By: */s/ Peter D. Morgenstern*
Peter D. Morgenstern
(pmorgenstern@mfbnyc.com)
885 Third Avenue, 22nd Floor
New York, New York 10022
(212) 750-6776
(212) 750-3128 (Facsimile)

*Attorneys for Plaintiffs*

THOMPSON, COE, COUSINS & IRONS, LLP

By: */s/ Thomas A. Culpepper*
Thomas A. Culpepper
(tculpepper@thompsoncoe.com)
Stephen C. Richman
(srichman@thompsoncoe.com)
700 N. Pearl St.
Twenty-Fifth Floor—Plaza of the Americas
Dallas, Texas 75201
(214) 871-8200

*Attorneys for Defendant Breazeale, Sachse, &
Wilson, L.L.P.*

COBB MARTINEZ WOODWARD PLLC

By: */s/ William D. Cobb*
William D. Cobb, Jr.
(wcobb@cobbmartinez.com)
Carrie J. Phaneuf
(cphaneuf@cobbmartinez.com)
Jonathan C. LaMendola
(jlamendola@cobbmartinez.com)
1700 Pacific Ave, Suite 3100
Dallas, TX 75201
(214) 220-5206
(214) 220-5256 (Facsimile)

*Attorneys for Defendant Claude Reynaud*

MCKENNA & PRESCOTT PLLC

By: */s/ Bruce A. McKenna*
Bruce A. McKenna
(bmckenna@mpoklaw.com)
5801 E. 41st Street, Suite 501
Tulsa, OK 74135
(918) 935-2085
(918) 935-2086 (Facsimile)

*Attorneys for Defendant Claude Reynaud*

**JOSEPH HAGE AARONSON LLC**

By: */s/ Gregory P. Joseph*
Gregory P. Joseph (gjoseph@jhany.com)
Douglas J. Pepe (dpepe@jhany.com)
Jeffrey H. Zaiger (jzaiger@jhany.com)
Courtney A. Solomon (csolomon@jhany.com)
485 Lexington Avenue, 30th Floor
New York, NY  10017
(212) 407-1200
(212) 407-1299 (Facsimile)

*Attorneys for Defendants Adams and Reese
LLP and James Austin*

**STANLEY FRANK & ROSE LLP**

By: */s/ Michael J. Stanley*
Michael J. Stanley
(mstanley@stanleylaw.com)
7026 Old Katy Road, Suite 259
Houston, TX 77024
(713) 980-4381
(713) 980-1179 (facsimile)

*Attorneys for Defendant J.D. Perry*

753458

**KELLY HART & HALLMAN LLP**

By: *David E. Keltner*
David E. Keltner
(david.keltner@kellyhart.com)
201 Main Street, Suite 2500
Fort Worth, Texas 76102
(817) 878-3560
(817) 878-9760 (Facsimile)

*Local Attorneys for Defendants Adams and
Reese LLP and James Austin*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on August 11, 2014, a true copy of the foregoing Joint Report was filed electronically with the Clerk of Court, using the CM/ECF system, which sent notification of such filing to all parties and counsel in this case.



*/s/ Jeffrey H. Zaiger*