IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| THE OFFICIAL STANFORD INVESTORS COMMITTEE, *et al.*, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 3:11-CV-0329-N |
| BREAZEALE SACHSE & WILSON LLP, *et al.*, | § § § | |
| Defendants. | § § | |

## ORDER

This Order addresses Defendants Adams & Reese LLP ("A&R") and James Austin's motion to dismiss [22]; Defendant Michael Contorno's motion to dismiss [24]; Defendant Louis Fournet's motion to dismiss [39]; Defendant Breazeale Sachse & Wilson LLP's ("BSW") motion to dismiss [68]; and Defendant Claude Reynaud's motion to dismiss [71]. For the reasons that follow, the Court grants in part and denies in part the motions.[1]

### THE ORIGIN OF THE DISPUTE

This case arises out of the Ponzi scheme perpetrated by R. Allen Stanford, his associates, and various entities under his control (collectively, "Stanford"). The underlying facts of Stanford's scheme have been well developed. *See, e.g.*, *Janvey v. Democratic Senatorial Campaign Comm., Inc.*, 712 F.3d 185, 188–89 (5th Cir. 2013). Stanford was the head of a large, multinational financial company called Stanford Financial Group ("SFG").

---

[1]The Court also grants Plaintiffs' motion for leave to exceed page limits [76].

ORDER – PAGE 1

Essentially, Stanford's scheme involved the sale of fraudulent certificates of deposit ("CDs") by Stanford International Bank Limited ("SIBL"), a bank located in Antigua. Stanford used various means and entities, particularly Stanford Group Company ("SGC"), a broker/dealer and investment adviser branch headquartered in Houston, to sell the CDs. Although Stanford represented to investors that the CD proceeds were invested only in stable, highly liquid funds, in reality Stanford used the proceeds to invest in speculative real estate deals and to finance his own extravagant lifestyle.

This action centers around the Stanford Trust Company ("STC"), one of Stanford's entities located in Baton Rouge, Louisiana. Plaintiffs allege that in 1998, SGC acquired STC's outstanding common stock and Stanford thenceforth oversaw STC's operations. First Am. Compl. ("FAC") ¶ 59. According to Plaintiffs, SGC then referred investors who held IRA accounts to STC, which convinced them to invest their IRA accounts in SIBL CDs. *Id.* ¶¶ 29, 104. Plaintiffs' claims against Defendants are based on the assistance they each allegedly provided to STC during the time period in which STC invested its clients' IRA funds in the SIBL CDs. Among other things, Defendants allegedly assisted in hiding Stanford's wrongful conduct from regulators, such as Louisiana's Office of Financial Institutions ("OFI").

Plaintiffs assert claims against two sets of Defendants.[2] First, Plaintiffs assert claims against Adams & Reese LLP, James Austin, Breazeale, Sachse & Wilson LLP, Claude

---

[2]In this order, "Defendants" refers only to those Defendants whose motions to dismiss are considered.

ORDER – PAGE 2

Reynaud, and Michael Contorno (collectively, "Attorney Defendants") for conduct arising out of their legal representation of STC. Plaintiffs also assert claims against Louis Fournet and Claude Reynaud (collectively, "Officer and Director Defendants") for conduct arising out of their employment as officers and directors of STC.[3]

Plaintiffs are split in to two distinctive groups as well. First, the Official Stanford Investors Committee ("OSIC") asserts claims assigned to it by Ralph S. Janvey (the "Receiver"), the court-appointed Receiver for the Stanford entities.[4] Those claims are against all Defendants for (1) disgorgement of CD proceeds fraudulently transferred, (2) disgorgement under a theory of unjust enrichment, (3) restitution under a theory of money had and received, and against Officer and Director Defendants only for (4) breach of fiduciary duty. Additionally, Plaintiffs Horacio Mendez, Annalisa Mendez, and Philip Wilkinson (collectively, "Class Plaintiffs") seek to represent a putative class of investors and assert claims against all Defendants for (1) participation in/aiding and abetting breaches of fiduciary duty, (2) aiding and abetting violations of the Texas Securities Act ("TSA"), (3) participation in/aiding and abetting a fraudulent scheme, and (4) civil conspiracy. Defendants move to dismiss each of Plaintiffs' claims on various grounds.

---

[3]Thus, as it pertains to Reynaud, the term "Attorney Defendants" includes Reynaud in his capacity as an attorney, while the term "Officer and Director" Defendants refers to Reynaud in his capacity as an officer and director for STC.

[4]*See* FAC ¶¶ 156–157; *see also* Aug. 10, 2010 Order ¶¶ 2, 7–9 [1149], *in SEC v. Stanford International Bank Limited*, Civil Action No. 3:09-CV-0298-N (N.D. Tex. filed Feb. 17, 2009) (discussing the appointment and duties of OSIC).

# I. THE LEGAL STANDARDS

## A. Rule 12(b)(6)

When considering a Rule 12(b)(6) motion to dismiss, a court must determine whether the plaintiff has asserted a legally sufficient claim for relief. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court generally accepts well-pleaded facts as true and construes the complaint in the light most favorable to the plaintiff. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012). But a court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted).

In ruling on a Rule 12(b)(6) motion, a court generally limits its review to the face of the pleadings, accepting as true all well-pleaded facts and viewing them in the light most favorable to the plaintiff. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). However, a court may also consider documents outside of the pleadings if they fall within

certain limited categories. First, "[a] court is permitted ... to rely on 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). Second, "[a] written document that is attached to a complaint as an exhibit is considered part of the complaint and may be considered in a 12(b)(6) dismissal proceeding." *Ferrer*, 484 F.3d at 780. Third, a "court may consider documents attached to a motion to dismiss that 'are referred to in the plaintiff's complaint and are central to the plaintiff's claim.'" *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010) (quoting *Scanlan v. Tex. A & M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003)). Finally, "[i]n deciding a 12(b)(6) motion to dismiss, a court may permissibly refer to matters of public record." *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994) (citation omitted); *see also, e.g.*, *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (stating, in upholding district court's dismissal pursuant to Rule 12(b)(6), that "[t]he district court took appropriate judicial notice of publically available documents and transcripts produced by the [Food and Drug Administration], which were matters of public record directly relevant to the issue at hand").

### B. Rule 9(b)

Defendants assert that some of Plaintiffs' claims must be dismissed for failure to meet the heightened pleading standards of Federal Rule of Civil Procedure 9(b). Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). However, "[b]y its clear

terms, Rule 9(b) applies only to averments of fraud or mistake, not to averments of negligence, breach of fiduciary duty or non-fraudulent misstatement." *Tigue Inv. Co., Ltd. v. Chase Bank of Tex., N.A.*, 2004 WL 3170789, at *2 (N.D. Tex. 2004). Rule 9(b) may also apply "when fraudulent conduct is alleged to underlie a claim for which fraud is a possible – but not a necessary – element. In such cases, particularity is only required to the extent that a plaintiff in fact alleges fraud." *Id.* at *2. Rule 9(b) also applies to claims brought under Article 33 of the Texas Securities Act. *See Billitteri v. Sec. America, Inc.*, 2010 WL 6785484, at *4–5 (N.D. Tex. 2010) (concluding Rule 9(b) is appropriately applied to state securities law claims). However, Rule 9(b) generally does not apply to claims brought pursuant to the Texas Uniform Fraudulent Transfer Act ("TUFTA"). *See Janvey v. Alguire*, 846 F. Supp. 2d 662, 675–76 (N.D. Tex. 2011).

Pursuant to these principles, the Court holds that certain of Plaintiffs' allegations must meet the Rule 9(b) standard. In particular, the underlying allegations of fraud supporting Class Plaintiffs' claims for aiding and abetting violations of the TSA, breaches of fiduciary duty, and fraud must be pled with particularity, as must the allegations of fraudulent conduct supporting the claim for conspiracy.[5] However, the Court reiterates that the particularity

---

[5]In the Fifth Circuit, a plaintiff must plead "time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby." *Williams v. WMX Tech., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997) (alteration in original) (internal quotation marks omitted). In effect, Rule 9(b) requires a plaintiff to state "the who, what, when, where, and how" of alleged fraud. *Id.* at 179 (internal quotation marks omitted). "What constitutes 'particularity' will necessarily differ with the facts of each case." *Id.* (quoting *Guidry v. Bank of LaPlace*, 954 F.2d 278, 288 (5th Cir. 1992)); *see also* Nov. 30, 2011 Order 12–13, *in SEC v. SIB*, Civil Action No. 3:09-CV-0298-N (N.D. Tex. filed Feb. 17, 2009) (Holding SEC's various allegations of fraud were

requirements of Rule 9(b) apply only to the averments of fraud, and the Court thus does not require particularity as to every element of the fraud-based claims.

## II. CHOICE OF LAW

### A. The Court Declines to Make a Choice of Law Determination at this Stage

A&R bases a number of its arguments for dismissal on application of Louisiana law. Choice of law determinations require assessments of fact, *see Hughes Wood Prods., Inc. v. Wagner*, 18 S.W.3d 202, 204 (Tex. 2000), and thus are generally inappropriate for resolution on a motion to dismiss, *see, e.g.*, *Blanchard & Co., Inc. v. Contursi*, 2000 WL 574590, at *4 (E.D. La. 2000). The Court notes that it has previously resolved a choice of law question on a motion to dismiss, in a case involving some of the same claims and same Attorney Defendants as this case. *See* Sept. 11, 2013 Order 18–21 [58] (the "*Adams & Reese* Order"), *in Janvey v. Adams & Reese LLP*, Civil Action No. 3:12-CV-0495-N (N.D. Tex. filed Feb. 16, 2012). However, that determination applied specifically to the Receiver's claims against a number of the Attorney Defendants. *Id.* The Receiver does not directly assert claims in this action. Thus, the Court declines at this stage to determine what law applies to OSIC's and Class Plaintiffs' claims in this action.

### B. Impact of Analysis on Defendants' Motions

Defendants' motions to dismiss make a number of arguments based on the particulars of either Louisiana or Texas law. Given the Court's decision to defer consideration of what

---

sufficient to put defendants on notice such that they could prepare a defense).

law applies to the claims in this action, the Court denies dismissal based on state-specific arguments without prejudice to reassert once a final choice of law determination is made.

**1. The Court Declines to Dismiss OSIC's Claims Against Attorney Defendants as Perempted.** – A&R argues Louisiana Revised Statute 9:5605, LA. REV. STAT. ANN § 9:5605, bars claims against the Attorney Defendants. Because the Court does yet not determine whether Louisiana law applies to this action, the Court denies dismissal on this basis.

**2. The Court Declines to Dismiss "Aiding and Abetting" Claims Based on Louisiana Law.** – A number of Defendants argue that Louisiana law does not recognize "aiding and abetting" claims in the absence of conspiracy. *See, e.g.*, Mem. Supp. A&R Mot. Dismiss 16–17 [23]. In addition, Reynaud argues breach of fiduciary duty claims must fail because Louisiana law does not create fiduciary duties for financial institutions. Br. Supp. Reynaud Mot. Dismiss 20–22 [72]. The Court declines to address these arguments prior to a determination of what law applies to the claims in this action.[6]

**3. The Court Declines to Dismiss Claims Based on Application of Louisiana "Blue Sky" Laws.** – A&R and Austin argue that in contrast to the TSA, Lousiana's securities laws

---

[6]To the extent Defendants argue neither Texas nor Louisiana law supports "aiding and abetting" liability, the Court notes that when applying Texas law, it has refused to hold categorically that Texas does not recognize "aiding and abetting" liability. *See, e.g.*, Dec. 17, 2014 Order 19 [114], *in The Official Stanford Investors Committee v. Greenberg Traurig, LLP*, Civil Action No. 3:12-CV-4641-N (N.D. Tex. filed Nov. 15, 2012). The Court similarly declines to hold that "aiding and abetting" claims are inherently redundant of conspiracy claims. *See* March 4, 2015 Order 21–22 [176], *in Troice v. Proskauer Rose LLP*, Civil Action No. 3:09-CV-1600-N (N.D. Tex. filed Aug. 27, 2009).

do not provide for secondary liability.  Mem. Supp. A&R Mot. Dismiss 23–24.  For the same reasons as above, the Court declines to address this argument at this time.[7]

       ***4. The Court Declines to Dismiss Claims Based on Attorney Immunity.*** – A number of the Attorney Defendants argue the Texas attorney immunity doctrine bars the claims against them.  *See, e.g.*, *id.* at 17–19.  Because this argument assumes application of Texas law, the Court declines to address it at this time.  The Court also declines to address Attorney Defendants' contention that Texas bars aiding and abetting breach of fiduciary duty claims that are based on the provision of legal advice.  *See, e.g.*, *id.* at 29–30 (citing *Span Enters. v. Wood*, 274 S.W.3d 854, 858–59 (Tex. App. – Houston [1st Dist.] 2005)).

       ***5. The Court Declines to Dismiss Claims Based on State-Specific Fraudulent Transfer Law.*** – A number of Defendants argue that under Louisiana's fraudulent transfer law, OSIC's claims would be time-barred.  *See, e.g.*, Br. Supp. Fournet's Mot. Dismiss 9–10 [40].  As with the defenses above, the Court declines to address this argument at this stage.

### III. DEFENDANTS' CHALLENGES TO CAUSATION

       A number of Defendants assert as a blanket argument that Plaintiffs fail to sufficiently allege proximate cause.  *See, e.g.*, Mem. Supp. A&R Mot. Dismiss 19–23.  Typically, the

---

[7]The Court also points out that even if Louisiana has the "more significant relationship" to the claims in this action, there does not appear to be any impediment to Plaintiffs' asserting TSA claims.  In general, states may determine what geographic effect to give their statutes.  *See* RESTATEMENT (SECOND) OF CONFLICTS § 6 cmt. b (1971) ("Provided it is constitutional to do so, the court will apply a local statute in the manner intended by the legislature even when the local law of another state would be applicable under usual choice-of-law principles."); *accord Citizens Ins. Co. of America v. Daccach*, 217 S.W.3d 430, 443 (Tex. 2007).  The Texas Supreme Court has held the TSA applies to any sale that originates in Texas.  *Daccach*, 217 S.W.3d at 444–45.

question of causation is one of fact.  *See, e.g.*, *Clark v. Waggoner*, 452 S.W.2d 437, 440 (Tex. 1970); *State v. Bailey*, 905 So.2d 303, 305–06 (La. Ct. App. 2005).  This Court has previously declined to dismiss claims for a lack of proximate cause.  *See* March 4, 2015 Order [176], *in Troice v. Proskauer Rose LLP*, Civil Action No. 3:09-CV-1600-N (N.D. Tex. filed Aug. 27, 2009).  For the same reasons, the Court declines to dismiss any claims for lack of causation in this action at this stage.

## IV. OSIC'S CLAIMS

OSIC brings claims against Attorney Defendants for disgorgement under a fraudulent transfer theory, disgorgement under a theory of unjust enrichment, and restitution under a theory of money had and received.  Against the Officer and Director Defendants, OSIC brings the same set of claims in addition to a claim for breach of fiduciary duty.

### A. In Pari Delicto *Does Not Apply*

Although he does not elaborate on the argument, Fournet appears to take exception to OSIC's attempt to "stand in the shoes" of STC, a former Stanford entity.  *See* Br. Supp. Fournet Mot. Dismiss 11.  The Court has previously considered and rejected arguments addressed to the Receiver based on *in pari delicto*.  *See, e.g.*, Dec. 5, 2014 Order 9–10 [64], *in Janvey v. Willis of Colorado Inc.*, Civil Action No. 3:13-CV-3980-N (N.D. Tex. filed Oct. 1, 2013).  The Court rejects it here as well.

### B. Fournet's Arguments Against OSIC's Breach of Fiduciary Duty Claim

Fournet also appears to take issue with OSIC's breach of fiduciary duty claim generally, but does not specify the nature of his objection.  *See* Br. Supp. Fournet Mot.

ORDER – PAGE 10

Dismiss 11.  He appears to complain that OSIC does not refer to Louisiana law in defining its claim, although it does in defining other claims.  *Id.*  Fournet does not cite any authority indicating OSIC must define all claims in the complaint with reference to the particular law supporting the claims.  For that reason, the Court declines to dismiss based on this argument.

Finally, Fournet also argues that "[t]he fact that Fournet received a salary for work performed on behalf of STC does not equate to a breach of fiduciary duty to STC under any case authority of which Fournet is aware."  *Id.*  Fournet cites to Texas law in defining the standards for breach of fiduciary duty.  *Id.* n.7.  To the extent Fournet objects explicitly under Texas law, the Court declines to rule on the merits of the objection at this time.

### C. The Fraudulent Transfer Claims

BSW asserts OSIC fails to adequately plead its fraudulent transfer claims because it has not alleged facts suggesting STC's transfers were in fact fraudulent.  Br. Supp. BSW Mot. Dismiss 14 [69].  Specifically, BSW appears to contend that because STC was separately capitalized from other Stanford entities, none of the indicators of fraudulent intent applicable to Stanford generally should be applied to STC's transfers.  *See id.* (citing TEX. BUS. & COM. CODE ANN. § 24.005(b)).  However, OSIC pleads that SGC held 99% of STC's stock.  FAC ¶ 65.  And whether STC was separately capitalized is a question of fact the Court does not resolve at this stage.  Thus, OSIC sufficiently pleads that STC was part of the Stanford enterprise such that the insolvency triggers in section 24.005(b) would plausibly apply to STC and render its transfers fraudulent.

## D. The Equitable Claims

A number of Defendants also assert that OSIC's claims for unjust enrichment and money had and received should be dismissed because they are not independent causes of action under Texas law.[8]  *See, e.g.*, Mem. Supp. A&R Mot. Dismiss 35–36.  The Court has previously declined to dismiss equitable claims where they are, as here, plead as alternative claims.  *See* Dec. 17, 2014 Order 23–24 [114], *in the Official Stanford Investors Committee v. Greenberg Traurig, LLP*, Civil Action No. 3:12-CV-4641-N (N.D. Tex. filed Nov. 15, 2012).  For the same reasons, the Court also declines to do so here.

## E. The Breach of Fiduciary Duty Claims

Finally, BSW argues that the breach of fiduciary duty claim asserted against it through Reynaud should be dismissed as duplicative of claims brought in Civil Action Number 3:12-CV-0495-N.  Br. Supp. BSW Mot. Dismiss 16–17.  OSIC has voluntarily dismissed its claim for breach of fiduciary duty against Reynaud in his capacity as an officer and director.  *See* OSIC Not. Voluntary Dismissal [65].  OSIC does not assert a breach of fiduciary duty claim against Reynaud in his capacity as an attorney.  FAC ¶¶ 182–186.  OSIC does not argue that its breach of fiduciary duty claim persists against Reynaud.  Accordingly, the Court holds that to the extent it asserted one, OSIC's claim for breach of fiduciary duty against BSW was dismissed along with its direct claim against Reynaud.

---

[8]A&R also urges that Louisiana law does not recognize money had and received claims at all.  *See* Mem. Supp. A&R Mot. Dismiss 35.  Because the Court will not decide choice of law questions at this stage, the Court declines to address this argument.

## V. CLASS PLAINTIFFS' CLAIMS

Class Plaintiffs maintain claims against both the Attorney Defendants and the Officer and Director Defendant for participation in/aiding and abetting breach of fiduciary duty, aiding and abetting violations of the Texas Securities Act, participation in/aiding and abetting a fraudulent scheme, and civil conspiracy.

### A. Class Plaintiffs' Claims Under the Texas Securities Act

Class Plaintiffs bring claims under the TSA for aiding and abetting sales of unregistered securities, aiding and abetting sales by unregistered dealers, aiding and abetting sales through untruth or omission, and civil conspiracy to violate the TSA. To state a claim for secondary liability under the TSA, "a plaintiff must show (1) a primary violation of the securities laws, (2) that the aider and abettor has a general awareness of his role in the violation, (3) that he gave substantial assistance in the violation, and (4) that he intended to deceive the plaintiff or acted with reckless disregard for the truth of the primary violator's misrepresentations." *Dorsey*, 540 F.3d at 344 (internal quotation marks omitted).

*1. Plaintiffs Adequately Plead Three Primary Violations.* – Defendants challenge two of the three asserted primary violations specifically. First, Defendants assert that the claim based on the sale of unregistered securities fails because it is preempted by the National Securities Markets Improvement Act of 1996, Pub. L. No. 104-290, 110 Stat. 3416 (1996) ("NSMIA"). *See, e.g.*, Mem. Supp. A&R Mot. Dismiss 28–29. The Court has previously rejected this argument. *See, e.g.*, December 5, 2014 Order [64], *in Janvey v. Willis of Colorado Inc.*, Civil Action No. 3:13-CV-3980-N (N.D. Tex. filed Oct. 1, 2013) (citing

*Brown v. Earthboard Sports USA, Inc.*, 481 F.3d 901, 909 (6th Cir. 2007) (holding that to constitute covered securities, the securities must actually meet the conditions for exemption established by the SEC)). Plaintiffs sufficiently allege that Defendants were aware the SIBL CDs did not actually meet the requirements for the Regulation D exemption. *See* FAC ¶¶ 202, 204. Accordingly, NSMIA preemption is not an adequate ground for dismissal.

Defendants also assert that the claim based on sales by an unregistered dealer fails because SIBL, which sold its CDs through Stanford's registered broker/dealer SGC, was not required to register under the TSA. *See, e.g.*, Mem. Supp. A&R Mot. Dismiss 27–28. The registration exemption applies when an issuer sells its securities "*only* by or through a registered dealer acting as a fiscal agent for the issuer . . . ." TEX. REV. CIV. STAT. ANN. art. 581-4(C) (emphasis added). However, Plaintiffs allege SIBL sold its securities through dealers other than SGC. *See, e.g.*, FAC ¶ 26. Whether those companies were properly registered as dealers is a fact question inappropriate for resolution on a motion to dismiss. The Court declines to dismiss the claim on this basis.

Finally, Defendants object generally to Class Plaintiffs' failure to plead with particularity the underlying fraud supporting the TSA claims. However, Class Plaintiffs allege Stanford's scheme lasted from the mid-1980s until 2009, FAC ¶ 24, and that Stanford sold over $7.2 billion in fraudulent CDs, *id.* ¶ 26. Plaintiffs also allege with particularity the mechanics of the Stanford fraud, including the sale of offshore SIBL CDs through related feeder companies. *E.g.*, *id.* ¶ 30. Finally, Plaintiffs allege a number of facts concerning the specific misrepresentations Stanford made to sell the CDs. *E.g.*, *id.* ¶ 188. Given the scope

and duration of the Stanford fraud, the Court finds Plaintiffs have adequately alleged facts supporting the underlying fraudulent conduct giving rise to their TSA claims.

> ### 2. Class Plaintiffs Adequately Plead Scienter.[9]

– In order to be held liable as an aider and abettor under the TSA, a defendant must have "rendered assistance in the face of a perceived risk that its assistance would facilitate untruthful or illegal activity by the primary violator." *Sterling Trust Co. v. Adderley*, 168 S.W.3d 835, 842 (Tex. 2005) (internal quotation marks omitted). "In order to perceive such a risk, the alleged aider must possess a general awareness that its role was part of an overall activity that is improper." *Id.* (internal quotation marks omitted). Class Plaintiffs adequately allege facts suggesting each of the Defendants was aware of such a risk.

As to A&R, Class Plaintiffs allege partner Bob Schmidt drafted a legal opinion concerning the propriety of STC's relationship with SGC. FAC ¶¶ 96–97. Plaintiffs allege that despite his reservations about the arrangement, he permitted SFG employees to amend language in the opinion letter endorsing STC's ability to place client IRA funds in SIBL CDs. *Id.* ¶ 97. Class Plaintiffs also allege that A&R was made aware of OFI's concerns concerning SIBL's compliance with its Regulation D exemption and the competency and independence of regulators in Antigua. *Id.* ¶ 140. As to Austin, a partner at A&R, Class

---

[9]The "general awareness" element and the "intent to deceive" element as individually outlined in *Dorsey* can be viewed as two halves of a single scienter requirement. The Texas Supreme Court held in *Sterling Trust Co. v. Adderley*, 168 S.W.3d 835 (Tex. 2005), that the TSA's "reckless disregard for the truth or the law" element required an aider to possess a "general awareness that his role was part of an overall activity that is improper." *Id.* at 842 (citation omitted) (internal quotation marks omitted). Thus, the Court considers the two elements together here.

Plaintiffs allege Austin was aware that the SIBL CDs, in which STC was investing its clients'
funds, were not insured, had not been registered as securities, were not subject to regulation
in the US, and that STC was nevertheless not disclosing to investors that it was receiving
referral fees. *Id.* ¶ 107. Taken together and drawing all reasonable inferences in Class
Plaintiffs' favor, the Court finds these allegations sufficient to plead that A&R and Austin
perceived a risk that their assistance would facilitate unlawful activity by STC and its
affiliated entities.

Class Plaintiffs adequately allege Reynaud and BSW possessed the requisite scienter.
Class Plaintiffs allege that from the inception of Reynaud's relationship with STC, Reynaud
knew Stanford was engaged in ghost-writing regulatory correspondence from Antiguan
regulators. *Id.* ¶ 64. Plaintiffs allege Reynaud knew that despite OFI's prohibition, STC was
receiving fees for investing its clients' funds in SIBL CDs. FAC ¶¶ 100, 104–105. Class
Plaintiffs also allege Reynaud was aware that STC had misrepresented to OFI the nature of
the SIBL investments. *Id.* ¶ 83. Reynaud's knowledge as an officer and director for STC,
imputed to BSW, for which he was also employed, sufficiently raise an inference of an
awareness of the Stanford entities' involvement in improper activity.

Class Plaintiffs also make allegations concerning Contorno that, when viewed in a
light most favorable to Class Plaintiffs, adequately raise an inference of scienter. Class
Plaintiffs allege that despite concerns concerning the interrelated relationship between the
Stanford entities, he advised STC that it would be legally permissible to invest all of STC's

clients' funds in SIBL CDs. *Id.* ¶¶ 73, 76. Thus, according to Class Plaintiffs, Contorno knowingly provided a false legal opinion to satisfy his clients at STC.

Finally, as to Fournet, Class Plaintiffs allege he was aware that STC was receiving referral fees for its investment of clients' funds in SIBL CDs despite OFI's prohibition of the practice. *Id.* ¶ 117. In addition, Class Plaintiffs allege that all Defendants, including Fournet, were aware that the SIBL CDs were being marketed, in part through STC, to investors who did not meet the standards required for compliance with a Regulation D exemption. *Id.* ¶ 202. Taking these allegations as true and drawing all reasonable inferences in favor of Class Plaintiffs, the Court concludes Class Plaintiffs adequately allege scienter to support their claims based on the TSA.

   ***3. Class Plaintiffs Adequately Plead Substantial Assistance.*** – Texas Courts have not precisely articulated the standards governing application of the "substantial assistance" element. The court in *Goldstein v. Mortenson*, 113 S.W.3d 769, 777 (Tex. App. – Austin 2003, no pet.), held that a defendant rendered substantial assistance when it provided the primary violator with a loan that "enabl[ed the primary violator] to continue to operate, as well as to delay the Security Board's discovery of wrongdoing." *Id.*[10] Moreover, the Court notes that whether assistance is "substantial" appears to involve factual determinations. *See,*

––––––––––––––––

   [10]A&R argues *Goldstein* was superseded by *Adderley* and is thus no longer followed. Mem. Supp. A&R Reply 7 n.9 [79]. While *Goldstein*'s articulation of the scienter standard was superseded by *Adderley*, 168 S.W.3d at 841–43, A&R does not point the Court to any case superseding *Goldstein*'s analysis of the substantial assistance requirement. *See Navarro v. Grant Thornton, LLP*, 316 S.W.3d 715, 728 (Tex. App. – Houston [14th Dist.] 2010, no pet.) (disagreeing only with the factual basis for *Goldstein*'s finding of substantial assistance).

*e.g.*, *Hirata Corp. v. J.B. Oxford & Co.*, 193 F.R.D. 589, 600 (S.D. Ind. 2000) (collecting state cases determining that the "assistance" prong for state securities law claims is a question of fact).

Class Plaintiffs adequately allege conduct supporting the conclusion that each of the Defendants provided substantial assistance to the underlying violations. Class Plaintiffs allege A&R and Austin provided legal services to STC that facilitated its investment of STC IRA accounts in SIBL CDs. For instance, Class Plaintiffs allege Schmidt, a partner at A&R, issued a false legal opinion and omitted key information to convince OFI that STC's investments in SIBL CDs were legal. *Id.* ¶ 118. Plaintiffs also allege Austin took park in preparing a legal report to SFG that falsely represented that STC, as a fiduciary to an ERISA plan, could hold SIBL CDs for the plan. *Id.* ¶ 107.

Class Plaintiffs allege that BSW and Reynaud, with knowledge that STC lacked sufficient security for its clients' investments in SIBL securities, continued to assist STC in establishing trust production offices. *Id.* ¶¶ 67–68. Class Plaintiffs also allege Reynaud delivered fraudulent ghost-written letters from Antiguan regulators to OFI. *Id.* ¶¶ 64–65. Plaintiffs also allege BSW, along with A&R, referred their other clients to SFG, thereby increasing the sale of SIBL CDs. *Id.* ¶ 77. These allegations and others, when construed in a light most favorable to Class Plaintiffs, establish a reasonable inference of substantial assistance.

The Court reaches the same conclusion as to Contorno and Fournet. Class Plaintiffs allege Contorno ignored concerns about related-party transactions between the Stanford

entities and issued a false legal opinion concluding STC could market SIBL CDs to its clients. *Id.* ¶¶ 73, 76.  Class Plaintiffs allege Fournet, employed as STC's president, oversaw STC's operations and the continued investment of STC client accounts in SIBL CDs. *E.g.*, *id.* ¶ 112.  Along with the remaining allegations in the complaint, the Court finds these suffice to establish a reasonable inference of substantial assistance.

**4. The Court Declines to Determine Conspiracy to Violate the TSA Is not a Valid Claim.** – A number of Defendants argue that the TSA does not support a claim for conspiracy.  *See, e.g.*, Mem. Supp. A&R Mot. Dismiss 27.  The Court has previously declined at this stage to hold as a matter of law that the TSA will not support a conspiracy claim.  *See, e.g.*, Feb. 4, 2015 Order 17 [123], *in The Official Stanford Investors Committee v. Greenberg Traurig, LLP*, Civil Action No. 3:12-CV-4641-N (N.D. Tex. filed Nov. 15, 2012).  For the same reasons, the Court declines to dismiss the claim on this basis here.

**5. Certain TSA Claims Are Time Barred.** – Finally, BSW argues a number of Class Plaintiffs' TSA claims are time barred by the TSA's statute of repose.  Specifically, BSW argues Class Plaintiffs' claims based on the sale of unregistered securities and sales of securities by unregistered dealers are barred by TEX. REV. CIV. STAT. ANN. art. 581-33(H)(1)(a).  Br. Supp. BSW Mot. Dismiss 20–21.  Article 581-33(H)(1)(a) bars claims brought more than three years after the sale.  *Id.*  This Court has held previously held that this provision is a statute of repose, not a statute of limitations, and thus is not subject to equitable tolling or the discovery rule.  *See* Feb. 4, 2015 Order 10–11 [123], *in The Official Stanford Investors Committee v. Greenberg Traurig, LLP*, Civil Action No. 3:12-CV-4641-N (N.D.

Tex. filed Nov. 15, 2012).   Moreover, a claim for conspiracy does not revive claims otherwise barred by a statute of repose.  *See id.*  Accordingly, the Court dismisses all Class Plaintiffs' TSA claims for the sale of unregistered securities and the sale of securities by unregistered dealers to the extent they are based on sales taking place before February 17, 2008, three years before Class Plaintiffs filed this action.

## B. Class Plaintiffs' Claims for Civil Conspiracy

Defendants assert a number of arguments for dismissal of Class Plaintiffs' claims for civil conspiracy.[11]  Although the particulars of the civil conspiracy claim depend on what state law applies, Defendants' primary argument is that Class Plaintiffs fail to plead scienter for the claim, which is basically the same under both Texas and Louisiana law.[12]  *Compare Juhl v. Airington*, 936 S.W.2d 640, 644 (Tex. 1996) (requiring "'specific intent' to agree 'to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means'" (citations omitted)), *with Thomas v. North 40 Land Dev., Inc.*, 894 So.2d 1160, 1174 (La. Ct. App. 2005) (requiring "a meeting of the minds or collusion between the parties for the

_____

[11]A number of Defendants also challenge the adequacy of Class Plaintiffs' pleading of claims for aiding and abetting breach of fiduciary duty, and aiding and abetting fraud.  *See, e.g.*, Mem. Supp. A&R Mot. Dismiss 29–31.  Ultimate resolution of these claims will depend on whether the Court applies Louisiana or Texas law, as Defendants assert Louisiana does not recognize "aiding and abetting liability."  *E.g.*, *id.* at 19.  Assuming application of Texas law, the Court reiterates its findings as to claims for aiding and abetting violations of the TSA and civil conspiracy and holds Class Plaintiffs have adequately plead the remaining aiding and abetting claims.

[12]Certain Defendants also argue Class Plaintiffs' civil conspiracy claims would be time-barred under Texas law.  *See, e.g.*, Mem. Supp. A&R Mot. Dismiss 31.  Because this argument assumes application of Texas law, the Court declines to consider it at this time.

purpose of committing wrongdoing"). In both Texas and Louisiana, a conspiracy may be inferred from conduct or circumstantial evidence. *See Bradt v. Sebek*, 14 S.W.3d 756, 766 (Tex. App. – Houston [1st Dist.] 2000, pet. denied) (recognizing that a conspiratorial agreement may be informal and tacit, and established by circumstantial evidence); *Thomas*, 894 So.2d at 1174 (holding the actions in furtherance of a conspiracy must allow a jury to infer the underlying agreement).

Class Plaintiffs adequately allege facts that, when viewed in a light most favorable to Class Plaintiffs, support an inference of specific intent to accomplish an unlawful purpose. Specifically, Class Plaintiffs allege Defendants took part in a conspiracy to commit fraud, theft of fiduciary property, breach of fiduciary duty, and violations of the TSA. FAC ¶ 213. As discussed above in relation to Class Plaintiffs' TSA claims, Class Plaintiffs make a number of allegations concerning both the Attorney Defendants and the Officer and Director Defendants' knowledge of Stanford's underlying wrongdoing and the problems associated with the inter-connected nature of the Stanford entities. Having encountered a number of red flags and other inside information concerning the Stanford entities, the Attorney Defendants and Officer and Director Defendants continued to provide services to STC and to facilitate STC's investment of its clients' IRA accounts in SIBL CDs. The Court finds these allegations sufficient at this stage to infer a meeting of the minds and a tacit agreement to wrongfully invest IRA account holders' funds in SIBL CDs. Thus, the Court declines to dismiss Class Plaintiffs' civil conspiracy claims.

### CONCLUSION

The Court dismisses Class Plaintiffs' TSA claims based on the sale of unregistered securities and the sale of securities by unregistered dealers based on sales taking place prior to February 17, 2008. Because these claims are barred by a statute of repose, the Court does not grant leave to replead them. Defendants' motions to dismiss are denied in all other regards.

Signed March 24, 2015.

David C. Godbey
United States District Judge

ORDER – PAGE 22